UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Kenneth Barrett

     v.                            Civil No. 15-cv-339-JL
                                          Opinion No. 2017 DNH 022P

Badger Ladder, LLC and
Michigan Ladder Co., LLC

## MEMORANDUM ORDER

Plaintiff Kenneth Barrett has brought negligence and product liability claims against defendant Michigan Ladder Company seeking damages for injuries he sustained when an articulating ladder[1] designed and distributed by the defendant (the "Climb Pro ladder") collapsed under him.[2]  It did so, Barrett contends, because the ladder's hinges were not locked, despite having given off visual, audial, and physical indications of being locked (a "false lock").  Before the court are the parties' several motions in limine seeking to exclude a

---

[1] An articulating or articulated ladder is a ladder with hinges that can be put into various configurations, including a straight ladder, a step ladder, or a scaffold.  It can also be set up in a configuration resembling an inverted L (a "3/4 standoff position"), as the Climb Pro ladder was at the time of Barrett's accident.

[2] Badger Ladder, LLC, initially named as a second defendant, was voluntarily dismissed early in this action.  See Notice of Voluntary Dismissal (doc. no. 4).

variety of evidence and areas of inquiry from the upcoming trial.  The court addresses each motion in turn.

The court reminds the parties that the rulings herein are made without prejudice to revisiting particular issues in response to circumstances that might arise during trial. Furthermore, these rulings are limited to grounds argued in the parties' filings and raised at the final pretrial conference. The court reserves the right to assess other factors at trial, such as authenticity, hearsay, and best evidence, see Fed. R. Evid. 800 et seq., 900 et seq., and 1000 et seq., and where appropriate, arguments and grounds not raised by counsel.

I.  **Motions in limine**

A.  **Krause articulated ladders[3]**

Michigan Ladder moves to exclude evidence and testimony concerning articulated ladders designed by Krause, the originator of the Climb Pro ladder, on prejudice grounds.  See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of," inter alia, "unfair prejudice, confusing the issues, [or] misleading the jury.").  Michigan Ladder contends that allowing the plaintiff to present evidence about or discuss the Krause ladders, including reference to Krause's recall of certain of

---

[3] Mot. to Exclude Krause Articulated Ladders (doc. no. 30).

its ladders in 1998, would prejudice Michigan Ladder because the "Climb Pro ladder is not based on the Krause design."[4] Concluding that the plaintiff may be able to establish a connection between the Climb Pro ladder and the Krause ladder design such that evidence concerning Krause ladders would not unfairly prejudice the defendant or confuse the jury, the court denies the defendant's motion.

This pre-trial ruling is subject to two important caveats. First, it hinges on the plaintiff's introduction of evidence sufficient to connect the Krause ladders' design to that of the defendant's Climb Pro ladder as discussed below.  Should plaintiff fail to establish such a connection, see Fed. R. Evid. 104(b), the court will reevaluate this decision.  Second, and to be clear, this is not a ruling that all evidence concerning Krause ladders is admissible; rather, the court merely declines to exclude that broad category of evidence wholesale on the basis of defendant's Rule 403 objection.

As best the court can make out,[5] the plaintiff's evidence will demonstrate that Krause ladders were a predecessor in

---

[4] Id. ¶ 4.

[5] An additional observation is warranted here.  The parties have not conducted a great deal of discovery.  For example, the court understands that the defendant propounded no requests for the production of documents or interrogatories.  The court offers no criticism of the parties' trial preparation, as they are in the best position to assess their respective expenditure of

design and manufacture to defendant's Climb Pro ladders.  Krause
designed, manufactured, and sold at least one model of
articulated ladder.  In 1998, Krause recalled certain of its
articulated ladders because the hinges of those ladders could
spontaneously unlock during use, causing the ladder to collapse.
Krause revised the design of the hinge to address this problem,
then subsequently sold the ladder design and manufacturing
rights to Climb Tek, Inc.  It is unclear whether or to what
extent Climb Tek altered the ladder's design or manufacture
before conveying those same rights to Michigan Ladder in or
around 2009.[6]  According to its president and owner, Thomas
Harrison, Michigan Ladder altered the design of the Krause/Climb
Tek ladder in at least two respects unrelated to its hinges, and
then began manufacturing and selling its ladder under the
designation "Climb Pro."[7]

    This connection, if the plaintiff can introduce evidence
and testimony at trial to draw it, suffices to raise the

---

resources.  The court observes, however, that the lack of
information normally developed in discovery has increased the
court's difficulty in considering and ruling on these
evidentiary motions.

[6] Though Mr. Harrison testified that the "Climb Tek ladder . . .
had changes made to it from the Krause ladder," Obj. Ex. A (doc.
no. 39-1) at 67, he did not identify what those changes were or
whether they related to the hinges.

[7] See id. at 63–64, 67–68.

inference of a relationship between the design of the
defendant's ladders and the design of the Krause ladder -- and,
more specifically, between the design of the hinges on both
ladders.  Michigan Ladder has offered no evidence in rebuttal.
Specifically, Michigan Ladder has not identified any alterations
that Climb Tek made to the hinges during the period that it held
the design and manufacture rights to the Krause ladder, and has
identified only two alterations that Michigan Ladder made to the
Climb Tek ladder.  Neither of the defendant's alterations -- a
change in how the release rod worked and adding an additional
stabilizer bar -- affected the hinges.[8]  Accordingly, defendant's
motion to exclude any and all reference to the Krause ladder is
denied, contingent upon plaintiff eliciting evidence to
establish this connection.  See Fed. R. Evid. 104(b).

    The court turns next to the defendant's more specific
request that it exclude any reference to Krause's 1998 recall of
certain of its ladders.  According to the defendant, Krause
recalled its ladders "because of a problem with the coating on
the bolt of the hinges that allowed it to slip out when it was
locked."[9]  The parties agreed at the final pretrial conference
that this issue -- wherein the hinges, having been locked,

---

[8] Id. at 67-68.

[9] Mot. to Exclude Krause Articulated Ladders (doc. no. 30) at 2.

spontaneously unlock -- is unrelated to that which allegedly caused the plaintiff's accident, wherein the hinges never locked, despite purportedly giving indications to the contrary. The defendant argues, therefore, that evidence of the recall is unfairly prejudicial.  See Fed. R. Evid. 403.

Barrett counters that the recall of the Krause ladders put Michigan Ladder on notice of potential defects in the Krause ladder's hinge design.  Given such notice, he argues, Michigan Ladder had a duty to review the design of the hinge mechanism -- which, Barrett contends, and the evidence appears to suggest, the defendant did not.  To the extent that Barrett seeks to introduce the fact of the recall to establish notice to the defendant of potential defects, the probative value of the evidence outweighs the risk of unfair prejudice, see Fed. R. Evid. 403, and the court will allow it.

For these reasons, the court denies the defendant's motion in limine to exclude evidence concerning the Krause ladders. This ruling is conditional on the plaintiff's ability to introduce evidence and elicit testimony establishing a connection between the Krause ladders' hinges and the Climb Pro ladder's hinges as discussed supra.

### B.   Defendant's notice of false lock problems in Krause ladders[10]

Barrett seeks to introduce evidence that Michigan Ladder knew or should have known about the false lock issue, which allegedly caused his Climb Pro ladder to collapse.  Presuming such knowledge (actual or imputed), he contends that the defendant had a duty to warn its users of this issue, and also to review the hinge design and manufacture to address the problem.  He proposes two categories of evidence supporting this theory:  (1) other "ladder accidents involving the failure of the hinges to lock when they seemingly click into place and where there is a claim of excessive joint stiffness that contributed to an accident,"[11] and (2) drafts of a report by the Consumer Product Safety Commission (CPSC) prepared in connection with the Krause ladder recall, which noted the false lock problem that allegedly caused Barrett's accident.[12]

The court grants this motion as to the draft report and certain of the other ladder accidents, as detailed below, based on the information provided to the court during this pre-trial

---

[10] Mot. in Limine Re: Other Articulated Ladder Incidents (doc. no. 31).

[11] Obj. to Mot. in Limine to Exclude Other Articulated Ladder Incidents (doc. no. 41) at 1.

[12] This evidence came to light at the final pretrial conference, during which the defendant objected to its admission.

stage.  Also as detailed below, the court may revisit this ruling at trial based on the manner in which the plaintiff attempts to introduce the evidence and the plaintiff's proffer of appropriate foundation.

### 1. Krause ladder accidents

Barrett has collected information regarding or generated during five cases wherein a Krause ladder purportedly experienced the same false lock issue that Barrett alleges caused his accident.[13]  Michigan Ladder has moved to exclude this evidence as irrelevant and unduly prejudicial.  See Fed. R. Evid. 401-403.  The court grants this motion in part and denies it in part.  This ruling hinges, however, on the plaintiff's ability to establish the similarity between the Krause ladder's hinges and those in the defendant's Climb Pro ladder, as discussed supra Part II.A.  Should Barrett fail to make that fundamental preliminary showing, see Fed. R. Evid. 104(b), the similarity between plaintiff's accident and any involving the Krause ladders will be substantially undermined, and the court will revisit this determination.

---

[13] Plaintiff's counsel conceded at the final pretrial conference that evidence of accidents arising from defects in any ladders that were not the Krause, Climb Tek, or Climb Pro ladders lacked relevance to this action.

Evidence of prior accidents concerning the same product may
be admissible to show the defendant's knowledge of those
accidents (which is relevant to at least its duty to warn users
of its product), as well as to establish the existence of the
complained-of defect, causation, and negligent design.  Cf.
McKinnon v. Skil Corp., 638 F.2d 270, 277 (1st Cir. 1981).
Admissibility of that evidence for those purposes depends on a
showing that the "the accidents occurred under circumstances
substantially similar to those at issue in the case at bar."
Moulton v. Rival Co., 116 F.3d 22, 26-27 (1st Cir. 1997)
(quoting McKinnon, 638 F.2d at 277).  "Substantial similarity is
'a function of the theory of the case' and, therefore, does not
require that the circumstances surrounding the other accidents
be identical."  Pukt v. Nexgrill Indus., Inc., 2016 DNH 157, 3
(quoting Moulton, 116 F.3d at 27).

When offered to show "notice or awareness of a dangerous
condition," however, the requirement of substantially similar
circumstances "is relaxed.  In such circumstances, 'a lack of
exact similarity . . . will not cause exclusion provided the
accident was of a kind which should have served to warn the
defendant.'"  Pukt, 2016 DNH 157, 3-4 (quoting Bado-Santana v.
Ford Motor Co., 482 F. Supp. 2d 197, 200 (D.P.R. 2007)).
However, the plaintiff must be prepared to establish a
foundation for the evidence, including "a showing that the

evidence related to substantially similar products . . . and a showing that the defendant would have been aware of other accidents." Serna v. Olde Jackson Vill., Inc., 2015 DNH 159, 4-5 (DiClerico J.) (citing Forest v. Beloit Corp., 424 F.3d 344 (3d Cir. 2005)).  Though the court in Serna addressed itself to the foundation necessary for admission of evidence of lack of prior accidents, the same foundational considerations are relevant to the admissibility of evidence of other accidents in this case.

Plaintiff, as "[t]he party offering the evidence[,] bears the burden of showing that it is admissible." McKinnon, 638 F.2d at 277.  Upon the court's verbal order at the final pretrial conference, plaintiff filed a list of "other accidents" that he would seek to introduce at trial for this purpose.[14]  He cites five lawsuits in which a plaintiff testified in deposition or an expert opined that the Krause ladder suffered from the false locking problem and, more specifically, that one or more users of Krause ladders heard the hinges click even though the hinges were not fully locked.

The information contained in this filing alone does not permit the court to determine whether Barrett has made the requisite foundational showings.  If the lawsuits cited by

---

[14] See Five Krause Accidents (doc. no. 52).

Barrett involve a <u>claim</u> or <u>finding</u> of substantially the same defect (the false locking condition) in substantially the same product (the Krause ladder) the plaintiff may well satisfy this burden.  Accordingly, if the plaintiff seeks to introduce this evidence affirmatively, he should be prepared to lay the appropriate foundations, and the court will evaluate the evidence's admissibility under the "substantial similarity" standard and Federal Rules of Evidence 401-403, 602, and 901.

At the final pretrial conference, plaintiff's counsel represented that he intended to show documents from these five cases to Michigan Ladder's president and owner to establish the defendant's knowledge (or lack thereof) of the false lock problem in Krause ladders.[15]  For this purpose, and subject to an appropriate limiting instruction given by the court if the defendant so requests, <u>see</u> Fed. R. Evid. 105, plaintiff may introduce Czarnecki v. Home Depot, Inc., No. 07-4384, 2009 WL 1560194 (E.D. Pa. June 3, 2009).  It is reasonable to conclude that the defendant, had it performed due diligence on claims against Krause ladders, would have encountered this opinion, which was available on a public docket and through reporting services at or around the time that Michigan Ladder acquired the rights to the ladder and well before Barrett's accident.

---

[15] <u>See</u> <u>id.</u>

Furthermore, though the opinion resolves a motion to exclude expert testimony, it describes the ladder used (a Krause Multimatic, consisting of four sections with three sets of hinges) and the plaintiff's claims (strict products liability following the ladder's collapse after the plaintiff took steps to make sure the hinges were locked), which mirror the ladder and claims at issue in this action.  See Czarnecki, 2009 WL 1560194 at *1.

The plaintiff may not introduce documents from Truitt v. Westlake Hardware, No. 2:14-cv-00065-HEA (E.D. Mo. Filed June 20, 2014).  This lawsuit was filed nearly two years after Barrett's accident occurred on September 11, 2012.  As such, it could not have provided notice to the defendant of false lock problems in Krause ladders before the date of the accident.

Nor may the plaintiff introduce documents from Hudson v. Home Depot, No. 03-2-28389 (Wash. Super. Ct. filed June 26, 2003), Schneider v. Home Depot, Inc., No. 4:01-cv-02306 (filed July 9, 2001), or Smith v. Krause, Inc., No. 99-17618 (Fla. Cir. Ct. filed Oct. 14, 1999), on the basis of information presented in plaintiff's notice.  The plaintiff references (1) a deposition, (2) an expert report, and (3) an expert deposition, all of which he alleges describe the Krause ladder as falsely

locking.[16]  The cases appear to have been filed before Barrett's accident, but the court cannot discern the context of the information from the limited description provided by plaintiff's counsel.  Thus, the plaintiff has not established the necessary foundation for use of these documents to establish notice to the defendant, as described <u>supra</u>, and their admissibility at trial will depend on whether the plaintiff can establish that foundation.

### 2.  Consumer Product Safety Commission draft reports

At the final pretrial conference, the plaintiff represented that he would seek to introduce drafts of a report by the CPSC prepared in connection with the Krause ladder recall, which noted the false lock problem that allegedly caused Barrett's accident.  Barrett indicated that his expert witness, Gene Litwin, would testify as to their contents.  Michigan Ladder objected.

Barrett may not introduce these draft reports through Mr. Litwin.  "A party seeking to introduce expert testimony at trial must disclose to the opposing party a written report that includes 'a complete statement of all opinions the witness will express and the basis and reasons for them.'"  <u>Gay v. Stonebridge Life Ins. Co., 660 F.3d 58, 62 (1st Cir. 2011)</u>

---

[16] <u>See</u> Five Krause Accidents (doc. no. 52).

(quoting Fed. R. Civ. P. 26(a)(2)(B)).  That report must also
disclose "the facts or data considered by the witness in
forming" his or her opinions.  Fed. R. Civ. P. 26(a)(2)(B)(ii).
Failure to comply with this rule may preclude a party from
"us[ing] that information or witness to supply evidence . . . at
trial, unless the failure was substantially justified or is
harmless'" Id. at Rule 37(c)(1); see also Gay, 660 F.3d at 62
(quoting Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77
(1st Cir. 2009)).

     As Barrett acknowledges, Mr. Litwin did not disclose the
CPSC draft reports in his report.  Nor did he testify as to his
reliance on them during his deposition.  Indeed, plaintiff's
counsel represented at the final pretrial conference that
Mr. Litwin had been unaware of the draft report when he wrote
his own report.  Barrett has offered no justification for his
failure to obtain the documents in advance of the expert report
deadline or, upon obtaining them, to seek leave to supplement
Mr. Litwin's report.  Accordingly, Mr. Litwin is precluded from
testifying concerning the draft reports or their contents.  See
Contour Design, Inc. v. Chance Mold Steel Co., 2011 DNH 154, 9-
10, 25 (precluding introduction of expert testimony opinion not
disclosed in expert's report and based on information expert did
not rely on in preparing report).  Nor does the plaintiff's
argument that the draft reports fall, generally, within the

penumbra of Mr. Litwin's disclosed opinions alter this
exclusion.  See EnergyNorth Nat. Gas, Inc. v. Century Indem.
Co., No. CIV. 99-502-JD, 2005 WL 6762591, at *2 (D.N.H. Feb. 16,
2005).

To the extent that Barrett seeks to affirmatively introduce
the draft CPSC reports as direct evidence to establish the
defendant's notice (actual or imputed) of the false lock problem
with Krause's ladders by some other means, the court will
conduct the proper analysis under Federal Rules of Evidence
803(8), 901, and 902 at that time.

### C.   Caution Label 78[17]

Caution Label 78, affixed to one side of the Climb Pro
ladder, cautions the user that the side of the ladder indicated
by its arrow "must face user when used as straight ladder."
That arrow, however, points away from the "climb side" of the
ladder.[18]  Michigan Ladder concedes that the label, as affixed to
the Climb Pro ladder from which Barrett fell, was technically
inaccurate.[19]

---

[17] Mot. in Limine Re: Caution Label 78 (doc. no. 25).

[18] Mot. in Limine Re: Caution Label 78 Ex. A (doc. no. 25-2).

[19] Deposition Tr. of Erick Knox (doc. no. 40-8) at 61.
Defendant's expert further observed that a second caution label
concerning positioning of the ladder in the straight
configuration contradicted Caution Label 78.  Id. at 67.

It seeks to exclude evidence and testimony regarding Caution Label 78 on the grounds that the label lacks any probative value and, further, that the prejudicial effect of evidence concerning Caution Label 78 outweighs its probative value.  See Fed. R. Evid. 401-403.  Specifically, the defendant argues that Caution Label 78 lacks relevance to the plaintiff's claims because Barrett was using the ladder in what the parties call "the 3/4 standoff configuration,"[20] not as a straight ladder.  Thus, defendant argues, any inaccuracy in Caution Label 78 could not have caused Barrett's fall.  Allowing its introduction, the defendant continues, would only mislead the jury and "have an undue tendency to suggest a decision on an improper basis."[21]

Michigan Ladder is correct, generally, that evidence of "[a]ny alleged design defect which had nothing to do with plaintiff's injury is irrelevant." Weir v. Crown Equip. Corp., 217 F.3d 453, 461 (7th Cir. 2000).  Barrett does not proffer evidence concerning Caution Label 78 for that proposition, however.  Instead, Barrett offers the inaccuracy of Caution

---

[20] When in this configuration, the ladder is in the shape of an inverted letter "L," with the short side leaning against the wall.

[21] Mem. in Supp. of Mot. in Limine Re: Caution Label 78 (doc. no. 25-1) at 5.

Label 78 as evidence of Michigan Ladder's allegedly negligent approach to manufacturing and selling the Climb Pro ladder. Specifically, Caution Label 78's inaccuracy may serve as evidence that after obtaining the right to manufacture the ladder, Michigan Ladder began manufacturing without "assess[ing], updat[ing], chang[ing] or test[ing] the labels, instructions and warnings on and for the ladder . . . ."[22]  Had Michigan Ladder reviewed the ladder's labels at all, Barrett contends, it would have been aware that Caution Label 78 was inaccurate, and thus would have known to revisit its warnings entirely -- including, at the very least, to warn users against the possibility of a false locking situation.  Thus, Caution Label 78's inaccurate placement makes it more likely that the defendant failed to conduct such a review and, as such, is relevant to the plaintiff's negligence claim.  See Fed. R. Evid. 401.

The plaintiff may also introduce Caution Label 78 to impeach the credibility of the defendant's witnesses -- specifically its president and its expert.  See Fed. R. Evid. 607.  He contends that stiffness in the hinges of the Climb Pro exceeded the stiffness prescribed by the American National Standards Institution (ANSI) in its A-14.2 standard.

---

[22] Obj. to Mot. in Limine to Exclude Label 78 (doc. no. 40) at 1.

Harrison verified interrogatory responses to the effect that the
Michigan Ladder "insured that its labels, warnings and
instructions comply with the recommended labels and markings set
forth in ANSI A14.2 (2007)" and "utilized a design substantially
identical to another company, but insured the safety of its
design through ANSI design verification testing."[23]  To the
extent that Caution Label 78's inaccuracy, suggesting
inconsistency with these statements, calls Harrison's
credibility into question, it is permissible for impeachment
purposes subject to an appropriate limiting instruction given by
the court if the defendant so requests.  See Fed. R. Evid. 105.

     Accordingly, the defendant's motion to exclude evidence
concerning Caution Label 78 is denied.

     **D.    Recorded tests[24]**

     Michigan Ladder moves to exclude two video recordings of
tests and demonstrations performed on the ladder from which
Barrett fell -- specifically, a video of a demonstration
performed by Barrett's expert, Mr. Litwin, on August 7, 2014,
and a video dated February 17, 2016, of unlocked joint testing
performed by Barrett's counsel.  The court denies this motion.

---

[23] Defendant's Responses to Plaintiff's Interrogatories (doc.
no. 40-2) at 2-3.

[24] Mot. to Exclude Plaintiff's Videos and Tests (doc. no. 29).

At the final pretrial conference, plaintiff's counsel represented that the plaintiff would introduce only the first approximately 90 seconds of the video demonstration by Mr. Litwin.  After viewing that portion of the video during the conference, the defendant withdrew its objection as to that video.

The video of the unlocked joint testing performed by Barrett's counsel warrants further discussion.  Michigan Ladder objected to its introduction on two grounds.  Neither merit exclusion at this pre-trial stage, but the court reminds counsel that these rulings are preliminary in nature, address only those objections raised by the defendant in its motion in limine, and are made under the presumption that plaintiff's counsel will be able to lay a proper foundation for the video under Federal Rules of Evidence 702, 703, and 901.

First, the defendant contends that the video may not be compliant with the ANSI standard in that:  (1) the ladder's angle vis-à-vis the ground surface and wall is unclear, (2) it is unclear whether test was conducted on compliant surfaces, and (3) the lawyer shown standing on the ladder in the test is not a five-pound weight, as the standard requires.[25]  These objections

---

[25] Mem. in Supp. of Mot. to Exclude Plaintiff's Videos and Tests (doc. no. 29-1) at 5.

go more to the weight of the evidence than its admissibility.
For example, as to the last, the ANSI standard requires the
ladder to ladder's hinges to give way under a weight of five
pounds, or even less.[26]  If the hinges would give way under a
five-pound weight, it is a fair inference that they also would
give way under the weight of the plaintiff's attorney, which of
course exceeds five pounds.  The application of a person instead
of a five-pound weight does not, therefore, appear to affect the
reliability of the test performed, a proposition with which the
defendant agrees.  As to the angle of the ladder and the testing
surface, the court presumes that the plaintiff's expert, who
disclosed reliance on the video and who will be subject to cross
examination, will describe the test performed in the video and
testify (based either on personal knowledge or another adequate
basis) as to whether the video shows a standards-compliant test.
See Fed. R. Evid. 602, 702, and 703.

Second, the defendant objects to plaintiff's counsel
appearing in the video on the grounds that it renders counsel a
witness in this case.  While disagreeing that this appearance

---

[26] Obj. to Mot. to Exclude Plaintiff's Videos and Tests Ex. 7
(doc. no. 43-7) ("The mid-span of the joints shall then be
unlocked, and a 5 pound vertical load applied over a 3-1/2 inch
wide area at the center of the lowest rung.  The ladder shall
fold toward the wall and no longer remain straight.  Folding of
the ladder at less than 5 pounds is also acceptable.").

<u>necessarily</u> renders counsel a witness in this action,[27] the court acknowledges its irregularity.  <u>See</u> N.H. R. Prof'l Conduct 3.7 ("Lawyer as a Witness").  As defendant's counsel agreed at the final pretrial conference, however, any prejudice to the defendant based on this fact may be mitigated by rendering the face of plaintiff's counsel unrecognizable in the video, and prohibiting counsel from testifying at trial or making representations to the jury about the video's contents.

Finally, Michigan Ladder also seeks exclusion of any additional video recordings of tests "that are not created under conditions substantially similar to those at issue in the trial."[28]  Because plaintiff represents that he will not seek to introduce other videos, the court denies this request as moot, albeit without prejudice to revisiting the issue should plaintiff's position change before or during trial.

**E.   Defendant's other motions in limine**

Michigan Ladder filed three additional motions in limine, seeking to exclude:  (1) evidence and testimony concerning any settlements into which it had entered with third parties

---

[27] It does, however, raise the question of just how plaintiff intends to authenticate the video.  <u>See</u> Fed. R. Evid. 602, 901.

[28] Mot. to Exclude Plaintiff's Videos and Tests (doc. no. 29) ¶ 3.

resolving other claims arising from other ladder accidents;[29]
(2) testimony and opinions not previously disclosed by
plaintiff's expert;[30] and (3) evidence of remedial measures
taken by other ladder manufactures to avoid accidents such as
Barrett's, as well as designs of similar ladders made after
Barrett's accident.[31]  Michigan Ladder is correct, as a general
matter, that evidence of a defendant's settlements of other
claims is not admissible under Federal Rule of Evidence 408, see
Portugues-Santana v. Rekomdiv Int'l, 657 F.3d 56 (1st Cir.
2011), that Federal Rule of Civil Procedure 26(a)(2)(B)
prohibits introduction of previously-undisclosed expert
opinions, see Harriman v. Hancock Cty., 627 F.3d 22, 29 (1st
Cir. 2010), and that "evidence of subsequent remedial measures
is inadmissible to prove negligence,"[32] Nieves-Romero v. United
States, 715 F.3d 375, 380 (1st Cir. 2013).

---

[29] Mot. in Limine Re: Settlements (doc. no. 26).

[30] Mot. to Exclude Expert Opinions and Exhibits Not Previously
Disclosed (doc. no. 27).

[31] Mot. in Limine to Exclude Evidence of Subsequent Remedial
Measures and Subsequent Designs of Similar Products(doc.
no. 28).

[32] Though Michigan Ladder objects to introduction of subsequent
remedial measure evidence under Rules 402 and 403, the court
notes that Rule 407 is the more traditional basis on which to
exclude such evidence.

Michigan Ladder identifies no specific pieces of evidence that the plaintiffs may introduce that fall into these categories, however.  Though the court is disinclined to admit evidence that runs afoul of the Federal Rules of Evidence and Civil Procedure, it is not prepared to rule generally on the admissibility of broad categories of information absent some more particular identification by the defendant of the evidence in question.  See Rockwood Select Asset Fund XI, (6)-1, LLC v. Devine, Millimet & Branch, PA, 2016 DNH 191, 24.  These motions are akin to written, pretrial motions "to exclude irrelevant evidence" under Federal Rule of Evidence 402, or "to exclude hearsay" under Federal Rule of Evidence 802, without identifying such evidence to be excluded or indicating any intention by the adverse party to introduce such evidence.  A better practice would be to confer with adverse counsel to ascertain any intent to introduce specific types of evidence, and to notify the court of any resulting representations and agreements.  This practice would preserve the parties' positions without triggering needless objections and deadlines, all of which create needless work for counsel, the court, and its staff.

Accordingly, the court denies as moot Michigan Ladder's motions to exclude settlement agreements, previously-undisclosed expert opinions, and evidence of subsequent remedial measures,

albeit without prejudice to Michigan Ladder raising more specific objections to particular evidence introduced at trial.[33]

### F.   Secatore testimony, records, and photographs

In its pretrial statement, Michigan Ladder indicated that it may call Peter Secatore, a private investigator, as a witness, and that it may introduce photographs taken by Secatore, an investigative report that he prepared, and a video and transcript of Secatore's interview of a witness.[34]  Barrett objects to the introduction of either Secatore's testimony or his photographs on the grounds that Michigan Ladder shielded them from discovery under the work product doctrine, and failed to disclose Secatore as an expert under Rule 26.[35]

The party asserting the work product protection bears the burden of demonstrating that the discovery sought constitutes "documents and tangible things that are prepared in anticipation

---

[33] To be clear, the court has not ruled such evidence admissible. The court merely declines to rule it entirely inadmissible at this pretrial stage, in light of the defendant's failure to develop the object of its motions.

[34] Defendant's Pretrial Statement (doc. no. 23) at 2-3.

[35] See Plaintiff's Obj. to Defendant's Pretrial Statement (doc. no. 42).  Though plaintiff raised this issue in his objection to the defendant's pretrial statement rather than in an affirmative motion for relief, which would have been proper under Local Rule 7.1(a)(1), the court construes plaintiff's objection as a motion to exclude Secatore's testimony and photographs in the interest of fairness and proceeding to trial in an expeditious manner.

of litigation or for trial by or for another party or its representative . . . ." Fed. R. Civ. P. 26(b)(3)(A).  It is unclear to the court whether Secatore's photographs of the scene of the accident, his report of plaintiff's statements, and his transcript of a witness's statement, were "prepared in anticipation of litigation or for trial," id., and thus enjoy work product protection.  The court need not resolve that issue, however.

Even assuming that they are protected, the defendant has waived that protection as to the photographs and the plaintiff's statement.  The defendant concedes that some subset of the photographs taken by Secatore were relied on by the defendant's expert, attached to his expert report, and thus disclosed to the plaintiff and his counsel.  The defendant thus waived the protection over Secatore's photographs.  See United States v. Massachusetts Inst. of Tech., 129 F.3d 681, 686–87 (1st Cir. 1997) (disclosure to adversary waives work product protection). Along much the same lines, the plaintiff is entitled to discover any statements that he, himself, made to Secatore in the presence of his own counsel.  Accordingly, the court ordered the defendant to produce the report containing the plaintiff's statements.

Separately, and finally, the defendant agreed at the final pretrial conference to produce the transcript of the witness's

statement.  Presuming that the defendant produced these materials on the day of the final pretrial conference, as ordered, the court finds no prejudice to plaintiff.  Most importantly, plaintiff had the witness's statement in hand before taking his video deposition, which ameliorates any prejudice to the plaintiff occasioned by this late disclosure. Furthermore, plaintiff's counsel will have had an opportunity to prepare plaintiff on the basis of his statement to Secatore.

## II. <u>Conclusion</u>

For the foregoing reasons, the court GRANTS-IN-PART and DENIES-IN-PART the defendant's motion in limine to exclude evidence concerning other accidents,[36] and DENIES the defendant's motions in limine to exclude evidence concerning:  Caution Label 78,[37] settlement agreements,[38] undisclosed expert opinions and exhibits,[39] subsequent remedial measures,[40] video recordings of tests and demonstrations,[41] and Krause articulated ladders.[42]

---

[36] Document no. 31.

[37] Document no. 25.

[38] Document no. 26.

[39] Document no. 27.

[40] Document no. 28.

[41] Document no. 29.

[42] Document no. 30.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  February 3, 2017

cc:  David S.V. Shirley, Esq.
     Lawrence S. Smith, Esq.